IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARY ANN BAUER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:18-cv-01293 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| MICHAEL S. FITZHUGH, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendants' Motion for Partial Judgment on the Pleadings (Doc. No. 50, "Motion"). Plaintiff filed a Response opposing the Motion (Doc. No. 53). Defendants replied, (Doc. No. 55), and the Motion is ripe for review.

For the reasons stated herein, the Motion will be **GRANTED**. Additionally, Defendant Fitzhugh will be dismissed from this action in its entirety.

## PLAINTIFF'S FACTUAL ALLEGATIONS AND CLAIMS

In her Amended Complaint,[1] Plaintiff states that she is the natural mother and next-of-kin of Joseph Allen Bauer ("Decedent"). (Doc. No. 27 at 1, 2). Decedent was arrested for shoplifting and was detained after being unable to make bail. (*Id.* at 3). Decedent allegedly communicated his past suicidal thoughts and history of mental illness, during his intake. (*Id.* at 4). As a result, Decedent was given an evaluation by an employee of Rudd Medical Services, P.L.C., whom

---

[1] Upon its filing, the Amended Complaint became the operative complaint in this matter. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). Plaintiff filed her initial Complaint (Doc. No. 1) on November 15, 2018, which was superseded by the Amended Complaint. Both Complaints will be discussed to some extent by the Court in this opinion since the Defendant alleges that neither complaint had proper certification and that notice was not given before the filing of the initial Complaint.

1

Plaintiff alleges was inadequately trained. (*Id.* at 4-5). Plaintiff alleges that Decedent was subsequently improperly monitored and, as a result, was able to make a successful suicide attempt by hanging himself on November 16, 2017, from which he died three days later. (*Id.* at 1).

Plaintiff brought two Counts in the Amended Complaint seeking monetary damages: i) under 42 U.S.C. § 1983 alleging various constitutional violations, and ii) a state law claim for negligence. Defendants are Michael S. Fitzhugh (the sheriff of Rutherford County), Bernard Salandy (administrator of the jail at issue), and Rutherford County (a political subdivision of the State of Tennessee).[2] (*Id.* at 2). Plaintiff does not seek any form of relief other than monetary damages. Plaintiff sues Defendant Fitzhugh in his official capacity only and sues Defendant Salandy in his individual capacity only. (*Id.*)

Defendants have moved for partial judgment on the pleadings, *i.e.*, judgment with regards to Count II of the Amended Complaint. Defendants claim that this cause of action falls within the Tennessee Health Care Liability Act ("HCLA"),[3] Tenn. Code Ann. §29-26-101 *et seq*., and that Plaintiff did not file with either of her complaints a certification of good faith as required by the

---

[2] The opening paragraph in Plaintiff's Amended Complaint indicates that she is suing Rutherford County, Rudd Medical Services, P.L.C., and Lisa L. Speck (the employee who initially examined Decedent) for damages. (Doc. No. 27 at 1). This indication appears to be an error on Plaintiff's part. Rudd Medical Services and Lisa L. Speck are not currently, and have never been, Defendants in this action. It appears that Plaintiff perhaps may have considered adding these parties as Defendants at some point, as her original Complaint included a procedural note that Plaintiff was therein contemporaneously complying with pre-suit notice requirements of the HCLA to include claims against jail health care providers. (Doc. No. 1 at 7). Regardless of this apparent intention, the only three Defendants in this action are Rutherford County, Michael S. Fitzhugh, and Bernard Salandy.

[3] This was previously known as the Tennessee Medical Malpractice Act. The statute was amended to instead use the language "health care liability" in 2012. The Court will use the current name of the statute, but it notes that much of the case law references the HCLA by its former name and frames discussion of the statute in terms of "medical malpractice." *Wade v. Jackson-Madison Cty. Gen. Hosp. Dist.*, 469 S.W.3d 54, 59 n. 3 (Tenn. Ct. App. 2015).

HCLA, specifically, Tenn. Code Ann. §29-26-121(a)(1). (Doc. No. 50 at 2). Additionally, according to Defendants, the HCLA requires particularized written notice of a potential health care liability claim at least 60 days before filing, Tenn. Code Ann. §29-26-121(a)(1), which was not given in this case. (*Id.* at 2-3). Defendants request Count II be dismissed with prejudice, or in the alternative, without prejudice. (*Id.* at 3).

It is undisputed that Plaintiff did not provide a certification of good faith or pre-trial notice as required for claims within the scope of the HCLA. However, the parties disagree about whether this is a HCLA claim such that certification and notice were required.

### DISMISSAL OF CLAIMS AGAINST DEFENDANT FITZHUGH

As noted, Sheriff Fitzhugh has been sued in his official capacity only. A sheriff sued in his or her official capacity is typically deemed to be a suit against the county. *Ingram v. Hall*, No. 3:090169, 2009 WL 400126, at *5 (M.D. Tenn. Feb. 18, 2009) (citing *Marchese v. Lucas*, 758 F.2d 181, 189 (6th Cir. 1985)); *Miller v. Burgess*, No. 3:07-CV-00785, 2008 WL 11510394, at *7 (M.D. Tenn. Oct. 29, 2008); *see also Gordon v. Carroll Cty., Tenn.*, No. 12-1118, 2012 WL 3887063, at *1 (W.D. Tenn. Sept. 6, 2012) ("[A] damages suit against [county-official defendants] in their official capacities is a suit against [the county.]"). And especially when the county itself was also named a defendant in the action, the official capacity claims should be dismissed. *See Gordon*, 2012 WL 3887063, at *1 (citing *Cox v. Reagan,* No. 3:06–CV–250, 2009 WL 2579655, at *4 (E.D. Tenn. Aug. 17, 2009) (as official capacity suit against officer was essentially a suit against the municipality, which was also a defendant, there was no need to maintain official capacity suit and dismissal was appropriate)). The claims against Defendant Fitzhugh, therefore, are dismissed with respect to both Count I and Count II, and he shall be dismissed as a party to this action.

3

## LEGAL STANDARD FOR RULE 12(c) MOTION

The Federal Rules of Civil Procedure provide that after the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "Rule 12(c) may be employed as a vehicle for raising several of the defenses enumerated in Rule 12(b), including the defense of failure to state a claim upon which relief may be granted." *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979); *see also Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989) (citing *Amersbach*); *Becker v. Crounce Corp.*, 822 F. Supp. 386, 391 n. 4 (W.D. Ky. 1993) (citing *Amersbach*).

When that defense is raised via a motion for judgment on the pleadings, the district court evaluates the motion using the same standard applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 n.1 (6th Cir. 1988); *Becker*, 822 F. Supp. at 391 n.4 (W.D. Ky. 1993) (citing *Amersbach*); *Kinney v. Mohr*, No. 2:13-cv-1229, 2017 WL 1395623, *4 (S.D. Ohio Apr. 19, 2017) (citing *Amersbach*); *Clemons v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, No. 3-14-1690, 2015 WL 4717398, at *1 (M.D. Tenn. Aug. 7, 2015). "Thus, the same rules which apply to judging the sufficiency of the pleadings apply to a Rule 12(c) motion as to a motion filed under Rule 12(b)(6)[.]" *Lacy v. Ohio Dept. of Job and Family Servs.*, No. 2:16-cv-912, 2017 WL 1397522, *1 (S.D. Ohio Apr. 19, 2017) (citing *Amersbach*). Indeed, when a Rule 12(c) motion is based on an asserted failure to state a claim upon which relief can be granted, "[t]he only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss." *Ruppe v. Knox Cty. Bd. Of Educ.*, 993 F. Supp. 2d 807, 809 (E.D. Tenn. 2014) (quoting *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694

4

(N.D. Ohio 2003)). In summary, the applicable standard for this Motion is the standard for motions under Rule 12(b)(6).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their progeny provide the applicable standard for motions to dismiss for failure to state a claim under Rule 12(b)(6). For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Id.* at 678. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018).

Consistent with these principles, the Sixth Circuit has noted that "[t]o survive a Rule 12(c) motion, 'a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory.'" *Hindel v. Husted*, 875 F.3d 344, 346–47 (6th Cir. 2017) (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)).

As a general rule, if matters outside the pleadings are presented on a Rule 12(c) motion and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006) ("Because Plaintiff presented matters outside of the pleadings with respect to

Defendant's Rule 12(c) motion, and because the district court did not exclude these matters, the district court should have converted the Rule 12(c) motion to a motion for summary judgment."). This applies even if the non-excluded material outside the pleadings is not actually relied upon or even considered at all by the court. *See id.*

## ANALYSIS

Tenn. Code Ann. § 29-26-101(a)(1) defines "health care liability action" as "any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." In turn, "[h]ealth care services . . . includes care by health care providers, which includes care by physicians, nurses, licensed practical nurses, pharmacists, pharmacy interns or pharmacy technicians under the supervision of a pharmacist, orderlies, certified nursing assistants, advance practice nurses, physician assistants, nursing technicians and other agents, employees and representatives of the provider, and also includes staffing, custodial or basic care, positioning, hydration and similar patient services." Tenn. Code Ann. § 29-26-101(b). The statute goes on to state that "[a]ny such civil action or claim is subject to this part regardless of any other claims, causes of action, or theories of liability alleged in the complaint." Tenn. Code Ann. § 29-26-101(c).

Defendants claim that Plaintiff's state law claim qualifies as a "health care liability action" as defined in Tenn. Code Ann. § 29-26-101(a)(1) and that therefore the claim is subject to the HCLA. Plaintiff counters that her state law claim is not a "health care liability action," and thus not subject to the HCLA, because (according to her) none of the Defendants is "health care provider," she has not alleged that any of the jail medical personnel were employed by any of

Defendants, and the Decedent's injuries were not caused by a "health care provider" or the provision or failure to provide health care services. (Doc. 53 at 1-2).[4]

Tennessee courts have found that health care liability actions are "a specialized type of negligence suit." *Estate of Bradley v. Hamilton Cty.*, No. E201402215COAR3CV, 2015 WL 9946266, at *4 (Tenn. Ct. App. Aug. 21, 2015). A complaint need not use any term of art to fall under the HCLA; instead a court should look at the "gravamen" or the "substantial point or essence" of the complaint and not rely on the characterization the parties give a claim. *Mathes v. Lane*, No. E2013-01457-COA-R3CV, 2014 WL 346676, at *4 (Tenn. Ct. App. Jan. 30, 2014) (quoting *Estate of French v. Stratford House*, 333 S.W.3d 546, 557 (Tenn. 2011)); *Dunlap v. Laurel Manor Health Care, Inc.*, 422 S.W.3d 577, 578 (Tenn. Ct. App. 2013) ("Our examination of the gravamen of the complaint leads us to the inescapable conclusion that the allegations of negligence bear a substantial relationship to the rendition of medical treatment.").

"[T]he distinction between [health care liability] and negligence is subtle; there is no rigid analytical line separating the two causes of action." *Estate of French*, 333 S.W.3d at 555. "The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring specialized skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of fact." *Graniger v. Methodist Hosp. Healthcare Sys., Inc.*, No. 02A01-9309-CV-00201, 1994 WL 496781, at *3 (Tenn. Ct. App. Sept. 9, 1994).

---

[4] The Court notes that Plaintiff's Response was a scant three pages in length, and it contained citation only to the definition of "health care provider" in the HCLA. (Doc. No. 53). Plaintiff has not argued any defenses for not providing Defendants with notice or a certificate of good faith, such as that this case should fall within the common knowledge exception to medical malpractice actions. *Graniger v. Methodist Hosp. Healthcare Sys., Inc.*, No. 02A01-9309-CV-00201, 1994 WL 496781, at *3 (Tenn. Ct. App. Sept. 9, 1994).

7

"If the alleged breach of the duty of care set forth in the complaint is one that was based upon medical art or science, training, or expertise, then it is a claim for medical malpractice. If, however, the act or omission complained of is one that requires no specialized skills, and could be assessed by the trier of fact based on ordinary everyday experiences, then the claim sounds in ordinary negligence." *Estate of French*, 333 S.W.3d at 556. Additionally, "[w]hen a plaintiff's claim is for injuries resulting from negligent medical treatment, the claim sounds in medical malpractice. When a plaintiff's claim is for injuries resulting from negligent acts that did not affect the medical treatment of a patient, the claim sounds in ordinary negligence." *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 640 (Tenn. 2003) (internal citations omitted) (holding that the adequacy of blood testing procedures in a laboratory did not constitute medical treatment).

When a claim is based on failure to assess an individual's condition, providing inadequate medical care, developing a plan of care, and/or failing to monitor an individual, it can be a "health care liability claim." *See Spires v. Blount Cty. Sheriff's Office*, No. 3:17-CV-403-JRG-HBG, 2018 WL 4006790, at *6-7 (E.D. Tenn. Aug. 22, 2018) (finding negligent medical monitoring, negligent administration of medications, and negligent care for a head injury to be claims under the HCLA when plaintiff did not file a response to defendant's motion to dismiss); *Stedam v. Cumberland Cty., Tennessee*, No. 2:19-CV-00032, 2019 WL 2501560, at *3 (M.D. Tenn. June 17, 2019) (finding allegations of failure to provide adequate medical care to be covered by the HCLA); *Estate of French*, 333 S.W.3d at 560 (finding assessing a patient's condition and developing a plan of care to be covered by the HCLA). Health care liability has regularly been found to encompass claims related to care of mental health issues, including issues related to suicide. *E.g.*, *Spires*, 2018 WL 4006790, at *6-7 (finding claims to be HCLA claim when plaintiff alleged negligent medical monitoring on suicide watch); *Cannon v. McKendree Vill., Inc.*, 295 S.W.3d 278, 279, 283 (Tenn.

Ct. App. 2008) (finding claims to be HCLA claim when deciding whether or not to restrain a patient with dementia and Alzheimer's disease); *White v. Washington Cty., Tenn.*, 85 F. Supp. 3d 955, 956, 959-60 (E.D. Tenn. 2015) (finding claims to be HCLA claim where patient committed suicide while in jail). However, routine negligence claims that do not invoke medical decision making do not fall under the HCLA. *Estate of French*, 333 S.W.3d at 560 (finding that ensuring staff complied with a plan of care and routine services would fall under the umbrella of ordinary negligence); *Peete v. Shelby Cty. Health Care Corp.*, 938 S.W.2d 693, 696 (Tenn. Ct. App. 1996) (finding ordinary negligence claim when the plaintiff was injured by an employee dismantling medical equipment and striking her in the head).

Here, Plaintiff couches her state law claim against Defendants as one for ordinary negligence. (Doc. No. 27 at 6). In her Response, Plaintiff claims that her allegations do not rest on any claim related to the HCLA: "Although the amended complaint characterizes these actions as a breach of the defendants' duty to provide medical care, this risk assessment and the actions taken in consequence thereof are not the sort of "health care services" contemplated by the HCLA… No health care provider provider [sic] provided, or failed to provide, any health care services to the decedent." (Doc. No. 53 at 3). Despite this contention in her Response, Plaintiff's Amended Complaint clearly lays out a claim for inadequate medical care and monitoring: "The defendants' duties to provide adequate medical care to the deceased and to avoid deliberate indifference to the deceased's constitutional rights as alleged above were breached by the defendants as alleged above." (Doc. No. 27 at 6). Many of the factual allegations made by Plaintiff in the Amended Complaint describe issues relating to Decedent's allegedly inadequate medical care and monitoring (the factual allegations were made in Count I but incorporated by reference in Count

9

II). Quoting verbatim from each of the following respectively identified paragraphs of the Amended Complaint:[5]

- 21. At the time of his booking into the jail, the deceased disclosed facts and exhibited traits and circumstances to one or more correctional employees at the jail that caused them to infer the existence of a substantial suicide risk to the deceased. These disclosures, traits, and circumstances included, without intending any limitation, that the deceased had suicidal thoughts and a history of mental health concerns . . .

- 22. The deceased's disclosures to one or more correctional officers at the jail were concerning enough to one or more correctional officers that one or more correctional officers sought the opinion of the jail's medical personnel about whether the deceased should be monitored closely to prevent a suicide attempt.

- 25. Based on established practice, policy, and custom of [Defendants] jail medical personnel without adequate mental health training are charged with indicating to jail personnel whether an inmate presents a significant risk for suicide.

---

[5] Plaintiff's Amended Complaint appears to contain another error in the nature of a typo or inappropriate kind of cut-and-paste job. Count II in the Amended Complaint specifically references by incorporation paragraphs 1 through 8 and 12 through 24. (Doc. No. 27 at 6). These are the exact same paragraphs referenced in Count II in the original Complaint, despite Plaintiff's addition in the Amended Complaint of several paragraphs of factual allegations in Count I. It appears to the Court that Plaintiff has copy/pasted Count II from the original Complaint into its Amended Complaint without updating as required the incorporation by reference paragraph. Plaintiff appears to intend to incorporate into Count II the paragraphs that bore the cited numbers in the original Complaint rather than in the Amended Complaint, which included those paragraphs but assigned different numbers to them. To illustrate, in Count II in the Amended Complaint, Plaintiff references all of the medical claims linked to the Constitutional allegations in one paragraph by stating: "The defendants' duties to provide adequate medical care to the deceased and to avoid deliberate indifference to the deceased's constitutional rights as alleged above were breached by the defendants as alleged above." (Doc. No. 27 at ¶ 34). This sweeping paragraph (which copies verbatim paragraph 27 in the original Complaint, part of Count II therein) contemplates the incorporation of all of the factual allegations of Count I. Additionally, Plaintiff's Response included only a single citation to the pleadings, and that sole citation references a paragraph number (27) that falls outside of Count II given the paragraph numbering in the Amended Complaint but, as noted above, fell within Count II in the original complaint. Therefore, the Court has referred back to the original Complaint to ascertain which factual allegations should be deemed included in Count II. Paragraphs 25-29, as cited, are all referenced in Count II in the original Complaint under different paragraph numbers.

    The Court realizes that no one is perfect, but it nevertheless has little choice but to admonish Plaintiff for this consequential sloppiness and lack of care, which regrettably show inattention unbecoming of attorneys practicing in federal court.

- 26. The practice, policy, and custom of the defendants to permit inadequately trained medical personnel to make suicide-risk decisions is tantamount to deliberate indifference to the medical needs of the deceased.

- 27. After making a statement to a correctional officer at the jail relating to past suicidal tendencies, and in keeping with the aforesaid policy of permitting inadequately trained medical personnel make suicide-risk decisions, the deceased was given a cursory evaluation by Lisa Speck, an inadequately trained employee of Rudd Medical Services, P.L.C., a medical services company contracted by the defendants to provide jail inmate medical services.

- 28. The due process clause of the Fourteenth Amendment to the United States Constitution provides pretrial detainees such as the deceased with a right to adequate medical treatment.

- 29. Given the extreme consequences of failing to adequately monitor suicidal inmates, including inmates such as the deceased who initiated a communication about his past suicidal tendencies, the failure by the defendants to provide adequately trained personnel to assess the risk of inmate suicide constitutes grossly inadequate medical care, and amounted to deliberate indifference by the defendants to the deceased's constitutional due-process rights.

(Doc. No. 27).

The Court finds that, though Plaintiff has couched her claim as one for negligence, she has really brought a claim for health care services. In her Response, Plaintiff does not dispute that she essentially brings a claim for negligent monitoring of Decedent, and she merely argues (without citation) that no health care services were provided. (Doc. No. 53 at 3). In both the Amended Complaint and Response, Plaintiff alleges that Decedent received inadequate monitoring and inadequate medical care, which, despite Plaintiff saying no medical services were provided, has been found to demark health care liability action under the HCLA. *E.g.*, *Spires*, 2018 WL 4006790, at *7; *Stedam*, 2019 WL 2501560, at *3. Evaluation of an individual's condition and their subsequent care and monitoring are not straightforward enough to be within the knowledge of a layperson, as evidenced not only by *Spires*, but also by the fact that the correctional officers in this

11

case felt the need to consult a more expert opinion. (Doc. No. 27 at 4). Therefore, the Court finds this to be an action for health care services as contemplated by the statute.

Plaintiff claims that there are no "health care providers" sued in this case because none of the Defendants meet the definition in the statute, and none of the jail medical staff were employed by Defendants (having been employed instead by Rudd Medical Services, P.L.C., with whom Defendants contracted). (Doc. No. 53 at 2, 3). The Court first turns to the question of whether Defendants are "health care providers." Plaintiff claims that none of the Defendants are "health care providers" because (supposedly) none of the Defendants meet the definition in the statute.

A "health care provider" within the meaning of the HCLA is defined as:

> (A) A health care practitioner licensed, authorized, certified, registered, or regulated under any chapter of title 63 or title 68, including, but not limited to, medical resident physicians, interns, and fellows participating in a training program of one of the accredited medical schools or of one of such medical school's affiliated teaching hospitals in Tennessee;
>
> (B) A nongovernmental health care facility licensed under title 68, chapter 11;
>
> (C) A nongovernmental health facility licensed under the Mental Health, Developmental Disability, and Personal Support Services Licensure Law, compiled in title 33, chapter 2, part 4;
>
> (D) The employee of a health care provider involved in the provision of health care services, including, but not limited to, physicians, nurses, licensed practical nurses, advance practice nurses, physician assistants, nursing technicians, pharmacy technicians, orderlies, certified nursing assistants, technicians and those physicians and nurses employed by a governmental health facility; or
>
> (E) A professional corporation or professional limited liability company established pursuant to title 48, a registered limited liability partnership rendering professional services under title 61 and which consists of one (1) or more health care practitioners licensed, authorized, certified, registered, or regulated under any chapter of title 63 or title 68, or any legal entity that is not itself required to be licensed but which employs one or more health care practitioners licensed, authorized, certified, registered, or regulated under any chapter of title 63 or title 68.

Tenn. Code Ann. § 29-26-101(a)(2).

A Tennessee court has previously interpreted the statute as encompassing a county operating a jail as a "health care provider." "By providing that a health care liability claim under the HCLA includes a claim against the state or a political subdivision thereof reveals that the General Assembly intended the requirements and benefits of the Act to apply to claims such as this one brought under [the Tennessee Governmental Tort Liability Act] against County." *Estate of Bradley*, 2015 WL 9946266, at *6-7; *see cf. F.H. v. Shelby Cty. Sch.*, No. 212CV02312JTFCGC, 2016 WL 10637101, at *3 (W.D. Tenn. Dec. 30, 2016) (holding that it was not futile to allow defendant Shelby County Schools to amend its answer to raise defenses under the HCLA). The Court ultimately concluded that "[c]learly, [administrator of the decedent's estate's] claim is (1) a civil action; (2) against a health care provider; and (3) the harm alleged arises from 'the provision of, or failure to provide, health care services.'" *Estate of Bradley*, 2015 WL 9946266, at *6-7. Discussing *Estate of Bradley*, a court in this district has also found that a county operating a jail is a health care provider when a plaintiff alleged that a county did not ensure, through its contracts and employee training, that adequate health care would be provided to an inmate. *Stedam*, 2019 WL 2501560, at *3 (citing *Estate of Bradley* and holding the same).

The Court thus finds that a county operating a jail can be a "health care provider." And the Court further finds that, taking the allegations of the Amended Complaint as true, Defendant Rutherford County is in fact a health care provider. Plaintiff stated in her Amended Complaint that Defendants had "duties to provide adequate medical care to the deceased." (*Id.* at 6). Plaintiff specifically alleges that the practices, policies, and customs regarding suicide-risk decision are inadequate, including the policies allowing the contractor to evaluate Decedent. (*Id.*) Plaintiff additionally alleges that Defendants failed to provide adequately trained personnel and that

13

decedent was inadequately monitored by Defendants. (*Id.* at 5). Therefore, the Court finds that Defendants in this case were health care providers as contemplated by the HCLA.

Plaintiff also relies on the (alleged) fact that the jail medical staff were employed not by Defendants, but rather by a county contractor (Rudd Medical Services, P.L.C.). (Doc. No. 53 at 2, 3). But that fact is irrelevant. As noted above, Plaintiff claims that Defendants *themselves* were required to provide medical services and supervision, and Defendant Rutherford County qualifies as a "health care provider."[6] So it does not matter whether the underlying individuals working for Rutherford County to provide health care services were county employees; no matter the employment status of these individuals, based on the law and the allegations of Plaintiffs complaint, Defendant Rutherford County is a health care provider..

Plaintiff additionally argues that since Decedent committed suicide himself, his injuries were not "caused" by a health care provider as apparently textually required for Count II to fall within the HCLA. (Doc. No. 53 at 2-3). Plaintiff asserts that: "[t]he injuries to the decedent were self-inflicted—not caused by a healthcare provider. The actions of the defendants complained of related to their failure to properly assess the decedent's suicide risk so as to implement suicide prevention measures." (Doc. No. 53 at 3).

Plaintiff points the Court to no authority for her position that in light of the allegations of the Amendment Complaint Decedent's injuries are not properly deemed caused by a health care

---

[6] Rutherford County's status, under the alleged facts and the law, to be a "health care provider" is not affected by the alleged fact that the underlying health care providers were employees not of it, but of a county contractor. As noted above, counties who provide jail medical services can be "health care providers" because they provide health care through individuals working for the county. The Court sees no reason why this rationale should not apply just because those individuals providing medical services on behalf of the county happen to be employees of a county contractor and not the county itself—and certainly Plaintiff has provided no such reason in his terse brief.

14

provider. And indeed, case law directly refutes her position. The Tennessee Supreme Court has found that suicide is not a superseding cause when a defendant's negligence makes it reasonably foreseeable that an individual would commit suicide.[7] *White v. Lawrence*, 975 S.W.2d 525, 530 (Tenn. 1998). In the same case, the Tennessee Supreme Court stated that though suicide is a self-inflicted act, "[t]he defendant's liability may not be reduced by comparing his negligent conduct with the decedent's intentional act of committing suicide since the intentional act was a foreseeable risk created by the defendant's negligence." *Id.* at 531. Essentially, Tennessee courts would not consider a foreseeable suicide to be a superseding cause, and they would not even allow a jury to consider the intentional action of Decedent in taking his own life when allocating fault among Defendants (essentially forcing Defendants to accept the entirety fault). As a result, this Court cannot find that a suicide, merely because it was self-inflicted, could not be "caused" by a health care provider. Therefore, the Court is unpersuaded by Plaintiff's argument that because Decedent committed suicide, his injuries were not caused by a health care provider.[8]

---

[7] Plaintiff does not characterize her argument as one of superseding causation, but the Defendants interpreted Plaintiff's argument as one of "an intervening act which broke the chain of causation." (Doc. No. 55 at 4). The Court agrees that this is a fair interpretation of Plaintiff's argument. As noted below, Plaintiff may find such an argument helpful in attempting to defeat the instant Motion, but the argument would hardly help Plaintiff later were he successful in keeping Count II alive.

[8] The Court also must caution Plaintiff to be careful what he wishes for. If the Court were to accept his argument that Decedent's suicide was an intervening cause that breaks the chain of causation from Defendants' alleged negligence, they might help him overcome the argument that Count II is covered by the HCLA (with its notice and certification requirements). But it would also imperil the merits of his claim on Count II by suggesting, of course, a lack of the required causation between Defendants' negligence and Decedent's injuries. The Court has difficulty seeing how Plaintiff could have it both ways—*i.e.*, having causation deemed broken for purposes of the applicability of the ACLA but not broken for purposes of the required causation element of a malpractice (or other negligence) claim.

15

In short, despite Plaintiff's (abbreviated) argument to the contrary, Count II is within the scope of the HCLA. It is therefore subject to the HCLA's certification and notification requirements.

It is undisputed that Plaintiff did not provide a certificate of good faith or notice when filing her Complaint. The Tennessee Supreme Court has found that both of these statutory requirements are mandatory and not subject to substantial compliance. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 304 (Tenn. 2012).

A certificate of good faith shows that a plaintiff has consulted with an expert who believes that there is a "good faith basis to maintain the action." Tenn. Code Ann. § 29-26-122(1)(B). Failure to file a certificate of good faith when required by statute will result in dismissal with prejudice. Tenn. Code Ann. § 29-26-122(c); *Myers*, 382 S.W.3d at 312. However, "[w]hile the requirements of Tennessee Code Annotated section 29–26–121 [the notice requirements] always apply to health care liability claims, section 29–26122 [the certificate of good faith] applies only to health care liability claims requiring expert testimony." *Estate of Bradley*, 2015 WL 9946266, at *5. Expert testimony is not required if the negligence is obvious and understandable by a layperson. *Id.*

Though technically a separate analysis, this Court has already discussed the type of negligence at issue in this case and determined it to be more than ordinary negligence, and it has noted that the claims at issue are outside the knowledge of a layperson. Plaintiff has not made an argument that expert testimony would be unnecessary in this case. The Court finds that the facts of this case, which includes allegations of failure to monitor an individual and claims about the adequacy of medical policies, fall outside of the knowledge of the average layperson and expert testimony would be required. *See Spires*, 2018 WL 4006790, at *7 (finding that certificate should

16

have been filed); *Dunlap*, 422 S.W.3d at 581 (finding that failure to monitor the condition of a patient raised questions of medical training and expertise and certificate should have been filed); *White*, 85 F. Supp. 3d at 959-60 ("In the absence of any proof or argument to the contrary, the Court concludes that plaintiff's claims of [Defendant's] failure to assess or provide adequate care for [Decedent's] mental health issues are not within the knowledge of ordinary laymen and would require expert testimony.") Therefore, the Court finds that a certificate of good faith should have been filed in this case.

Tenn. Code Ann § 29-26-121 also requires sixty days' notice be given to defendant health care providers prior to filing a complaint. Though the statute does not proscribe a penalty for violation of § 29-26-121, the Tennessee Supreme Court has held that the proper sanction for failure to comply with this provision is dismissal without prejudice. *Foster v. Chiles*, 467 S.W.3d 911, 913 (Tenn. 2015). However, because the Court finds that a certificate should have been filed in this case, the Court will dismiss the state law claim with prejudice. *Myers*, 382 S.W.3d at 304.

## CONCLUSION

For the reasons discussed above, Defendants' Motion will be **GRANTED,** and Plaintiff's state law claims recited in Count II of the Amended Complaint will be dismissed with prejudice for failure to comply with the provisions of the HCLA.

In addition, the claim in Count I against Defendant Fitzhugh will be dismissed, and he will be dismissed as a party to this action. Count I will remain pending against the other two Defendants.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE