IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MARY ANN BAUER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:18-cv-01293 |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| BERNARD SALANDY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Pending before the Court is a Motion for Summary Judgment filed by Defendants. (Doc. No. 66, the "Motion"). Plaintiff responded. (Doc. No. 71). Defendants replied. (Doc. No. 72). The Motion is ripe for review.

For the reasons discussed herein, the Court will grant Defendants' Motion.

## BACKGROUND[1]

Plaintiff is the mother of Joseph Bauer ("decedent"). (Doc. No. 70 at ¶ 1). On November 15, 2017, decedent was arrested on suspicion of shoplifting/theft. (*Id.* at ¶ 2). Decedent was transported to the Rutherford County Adult Detention Center ("RCADC") for pre-trial detention. (*Id.* at ¶ 3). While in detention, Decedent attempted suicide on November 16, 2017, and died on November 19, 2017. (*Id.* at ¶ 4).

Officer Truong was not employed by Rutherford County when he arrested decedent. (*Id.* at ¶ 5). Officer Truong completed a questionnaire with information provided by decedent and his

---

[1] The facts are taken from Defendants' Statement of Undisputed Facts. (Doc. No. 70). Plaintiff disputed none of Defendants' facts contained therein.

1

own observations of decedent, such as that he was calm, made no suicidal statements, and did not appear to be suicidal. (*Id.* at ¶¶ 6, 7, 8, 9, 10).

Brandi Dover, the judicial assistant and judicial commissioner for the Town of Smyrna, was not employed by Rutherford County on November 15, 2017 (the day of the arrest). (*Id.* at ¶¶ 11, 12). Dover set the amount of the bond for decedent's shoplifting charge while acting in her capacity as a judicial commissioner for the Town of Smyrna. (*Id.* at ¶¶ 14, 15). The Rutherford County Commission confirmed Dover to her position for the Town of Smyrna, but the Commission did not supervise or direct Dover. (*Id.* at ¶ 16). Rutherford County had no practice, policy, or custom that directed Dover's actions in setting the bond, and her decision was not influenced by Rutherford County officials. (*Id.* at ¶¶ 17, 18). Additionally, the Rutherford County Sheriff's Department has no role in establishing bail amounts. (*Id.* at ¶ 19).

Edna Parker was a booking officer at RCADC in 2017, and during decedent's booking she completed a standard admission form including medical questions. (*Id.* at ¶¶ 20, 21). Decedent responded "No" when Parker asked him "Do you have suicidal thoughts, or a history of mental health concerns?" (*Id.* at ¶ 23). Both Parker and decedent signed the form after it was completed. (*Id.* at ¶ 24). Parker had received training in suicide prevention and was trained to refer a detainee to medical personnel if a detainee made a reference to suicide. (*Id.* at ¶¶ 25, 26).

While being booked, decedent asked booking officer Brad Morris for the telephone number of a facility that cares for animals in Murfreesboro, Tennessee. (*Id.* at ¶¶ 27, 28). Morris informed decedent that he could not make telephone calls for detainees, and decedent stated, "You know, I have been suicidal in the past." (*Id.* at ¶ 30). Morris then removed decedent from his booking cell so that he could observe decedent until medical staff could evaluate him. (*Id.* at ¶ 31).

2

Nurse Lisa Speck then evaluated decedent's medical condition by performing an intake health assessment. (*Id.* at ¶ 51). As part of this process, Speck asked decedent if he had any feelings of hurting himself, if he had feelings of hopelessness, if he had ever considered or attempted suicide, or if he had any mental health complaints, and decedent responded "No" to each question. (*Id.* at ¶¶ 53, 54, 55, 56). Speck decided that decedent did not need to be placed on suicide or mental health observation, but she did schedule a follow-up assessment for someone to check decedent's blood pressure. (*Id.* at ¶¶ 61, 65). Morris then completed the booking process for decedent. (*Id.* at ¶ 41). In the morning of November 16, 2017 (the day of decedent's ultimately successful suicide attempt), another nurse, Emily Alexander, performed a vital signs check because of Speck's concern regarding decedent's high blood pressure, and Alexander also observed no signs of suicidal behavior. (*Id.* at ¶¶ 70, 72). That afternoon, an officer found decedent had hung himself in his cell. (*Id.* at ¶ 74).

Sheriff Fitzhugh (who has been dismissed as a Defendant to this action) is the chief policy-maker for Defendant Rutherford County as it relates to both the Sheriff's Department and RCADC. (*Id.* at ¶ 82). As of decedent's arrest, Rutherford County had established policies, procedures, and customs related to the assessment of newly incarcerated individuals for risk of suicide. (*Id.* at ¶ 83). At the time of decedent's suicide attempt, Rutherford County had a contract with a medical services provider to provide health care services and suicide risk assessment, and the staff of this medical services provider would make decisions regarding placing a detainee on suicide watch, since RCADC detention staff do not possess advanced medical training. (*Id.* at ¶¶ 85, 86, 87, 88). RCDAC staff had training regarding suicide risk assessment in order to know when to properly refer a detainee to medical staff. (*Id.* ¶¶ 90, 91). RCDAC deferred to the medical services provider to train its own staff. (*Id.* at ¶ 92).

Defendant Bernard Salandy was the administrator of RCADC during decedent's arrest and suicide, and he was not personally involved in decedent's booking process, medical screening, bail amount, or supervision. (*Id.* at ¶¶ 94, 96, 98).

The Amended Complaint set forth (1) a claim under 42 U.S.C. § 1983 for wrongful death (based primarily on the assertion that the bail amount was excessive and that the medical care was inadequate), and (2) state-law negligence claims. (Doc. No. 27). The Court has previously entered an order granting Defendants' Motion for a Partial Judgment on the Pleadings, whereby the Court dismissed Plaintiff's state-law claims against all Defendants (Count II) and all claims against Defendant Fitzhugh. (Doc. No. 65). Remaining as Defendants to Count I in this matter are Defendant Rutherford County and Defendant Salandy. Pending before the Court in this instance is Defendant's Motion for Summary Judgment, seeking summary judgment as to both Defendants on the sole remaining claim (Count I). (Doc. No. 66).

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A

genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628.

A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 2017 WL 57792 at **5 (6th Cir. Jan. 5, 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

## DISCUSSION

Defendants argue in their Motion that they are entitled to summary judgment because 1) Defendant Salandy is entitled to qualified immunity, and 2) Plaintiff cannot point to a custom, policy, or practice of Defendant Rutherford County that violated decedent's constitutional rights. (Doc. No. 67). As indicated above, because of the Court's previous order in ruling on the motion for partial judgment on the pleadings, these are the only two Defendants remaining as parties to this case. In her Response, Plaintiff states that she does not have any objections to the Motion. Her Response states in full:

> The undersigned attorney for the plaintiff responds to the Defendants' Motions for Summary Judgment (Doc. No. 66) first by acknowledging that he cannot in good faith advance any arguments suggesting the existence of a genuine dispute as to any material fact. Similarly, the defendants' motions and memorandum in support thereof (Doc. No. 67) take positions and provide legal support for same with respect to the plaintiff's Count I claim (Count II having been dismissed) that the undersigned cannot in good faith oppose, given the development of facts during discovery. Consequently, the undersigned cannot ethically contest such positions, and stands mute with respect to the motions for summary judgment.

(Doc. No. 71 at 1).[2]

---

[2] The Court tips its hat to Plaintiff's counsel for the candor display here. Such forthrightness is the kind of thing that burnishes his credibility before the Court and also preserves his, his client's, his adversaries', and the Court's time and resources.

One might think that this would be the end of it. But the Sixth Circuit has indicated that even when a party does not respond to a motion for summary judgment, the district court must still determine that the movant (here, Defendants) has borne his initial burden. *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[F]or all purposes, the movant must always bear this initial burden regardless if an adverse party fails to respond. In other words, a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden."). Though Plaintiff has responded without opposition in this instance (as opposed to not responding at all), the Court believes that it still must determine whether Defendants have discharged their burden in ruling on the Motion. The Court therefore will not grant this Motion solely because it is unopposed by Plaintiff, but instead looks to the merits of Defendants' arguments to determine if Defendants are entitled to summary judgment.

For the reasons discussed herein, the Court agrees that summary judgment in favor of Defendants is appropriate in this case.

A. Qualified Immunity of Defendant Salandy

The Complaint names Defendant Salandy as a Defendant in his official capacity, and it alleges that he should be held liable under § 1983 because he was involved in policies that dictated excessive bail and failed to provide adequately trained medical personnel or proper medical care to decedent, allowing for his successful suicide attempt. (Doc. No. 27). Defendant argues that Defendant Salandy is entitled to qualified immunity, and Plaintiff does not disagree.

The Sixth Circuit, in ruling on a prisoner suicide, has stated the test for qualified immunity as such:

7

This Court has adopted a three step analysis in determining when qualified immunity applies. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900–901 (6th Cir.2004). First, while viewing the facts in the light most favorable to the plaintiff, the Court determines whether a violation of plaintiff's constitutional rights has occurred. *Id.* Second, the Court asks if the violation "involved a clearly established constitutional right of which a reasonable person would have known." *Id.* Third, the Court determines if the plaintiff has offered evidence sufficient to show that the official's conduct was objectively unreasonable in light of the clearly established constitutional right at issue. *Id.* A negative answer to any of the three questions means that the officer is entitled to qualified immunity.

*Gray v. City of Detroit*, 399 F.3d 612, 615 (6th Cir. 2005). When looking at the first question in a

case involving a prisoner suicide, the Court further explained that:

To answer the first question, we must determine what rights a pre-trial detainee possesses with respect to his suicidal behavior. While the Eighth Amendment does not apply to pre-trial detainees, the Due Process Clause of the Fourteenth Amendment does provide them with a right to adequate medical treatment that is analogous to prisoners' rights under the Eighth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L.Ed.2d 605 (1983); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685–86 (6th Cir.2001). In order to sustain a § 1983 claim against individuals for failure to provide adequate medical care, a plaintiff must show that defendants acted with "deliberate indifference to serious medical needs." *Watkins*, 273 F.3d at 686 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976)).

Suicide is a difficult event to predict and prevent and often occurs without warning. Both the common law and the recently developed constitutional law applying to those in custody have taken this uncertainty into account in developing rules of liability based on foreseeability. In *Barber v. City of Salem*, this Court held that:

the proper inquiry concerning the liability of a City and its employees in both their official and individual capacities under section 1983 for a jail detainee's suicide is: whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs.

953 F.2d 232, 239–40 (6th Cir.1992) (adopting the holding of *Popham v. City of Talladega*, 908 F.2d 1561, 1563–64 (11th Cir.1990)). *Barber* confirmed an earlier holding that there is no general constitutional right of detainees to receive suicide screenings or to be placed in suicide safe facilities, unless the detainee has somehow demonstrated a strong likelihood of committing suicide. *See Danese v. Asman*, 875 F.2d 1239, 1244 (6th Cir.1989); *Crocker v. County of Macomb*, 119 Fed. Appx. 718, 724 (6th Cir.2005) (unpublished) (finding no change in the law since *Danese*

8

was decided in 1989). As one commentator put it, "[a] right to screening for suicidal propensities or tendencies arises when it is obvious that an inmate has such tendency or propensity" (emphasis added)—in other words, when the suicide is clearly foreseeable. George J. Franks, *The Conundrum of Federal Jail Suicide Case Law Under Section 1983 and Its Double Bind for Jail Administrators*, 17 Law & Psychol. Rev. 117, 125 (1993).

*Id.* at 615-16. Thus, the deliberate indifference standard contains both an objective and subjective component: under the objective component, an inmate must show a "sufficiently serious" medical need, and under the subjective component, a plaintiff must show "both that an official knew of her serious medical need and that, despite this knowledge, the official disregarded or responded unreasonably to that need." *Downard for Estate of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020). Additionally, there are barriers to bringing a § 1983 claim against a supervisor, instead of an officer. "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller v. Calhoun County*, 408 F.3d 803, 817 n. 3 (6th Cir.2005)). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984)).

Here, Defendants argue that there was no violation of decedent's constitutional rights. (Doc. No. 67 at 6). As noted above, Plaintiff makes no argument to the contrary. (Doc. No. 71). There is no indication that a violation of Plaintiff's constitutional rights occurred. The evidence of record does not show that Defendant Salandy (or any other employee of RCADC) knew of Plaintiff's need for medical care and yet disregarded or responded unreasonably to that need. As noted, the Sixth Circuit has expounded that in order to find deliberate indifference in a suicide case, the decedent must have shown a "strong likelihood" that they would take their own life. *Gray*, 399 F.3d at 615-16. There is no evidence that this was the case here.

9

Defendants succinctly sum up the argument as such:

> Mr. Salandy had absolutely no personal contact with Mr. Bauer. Even if he had, there was no conduct or statements by Mr. Bauer to anyone that demonstrated a strong likelihood that he was going to commit suicide. The only occurrence related to suicide was a single statement that Mr. Bauer made to RCADC officer Morris to the effect that "You know, I have been suicidal in the past." This statement is in stark contrast to the overwhelming evidence that demonstrates that Mr. Bauer did not appear to be suicidal . . .

 (Doc. No. 67 at 12-13 (internal citations to record omitted)).

Additionally, Defendant Salandy is an administrator, and there is no indication that he had any personal involvement in the events surrounding decedent's suicide (the setting of bail and the medical care) necessary to incur liability. *See Downard for Estate of Downard*, 968 F.3d at 600.

The Court agrees with Defendants. There is no evidence that Defendant Salandy was aware of any problems related to assessing detainees for suicide risk or training regarding evaluating detainees for a suicide risk. There is no evidence that decedent showed a "strong likelihood" of committing suicide, or that Defendant Salandy knew of decedent's likelihood to commit suicide and yet ignored it or responded unreasonably. Plaintiff does not allege that Defendant Salandy, an administrator, was personally involved in any event regarding decedent. There is no evidence that Defendant Salandy was involved in setting decedent's bail amount. Plaintiff does not raise any dispute of material fact as to these issues. Therefore, the Court cannot find that a violation of plaintiff's constitutional rights has occurred, and the Court cannot find that Defendant Salandy was personally involved in the events surrounding decedent's suicide.

As a result of the negative answer to the first question and the lack of evidence that Defendant Salandy subjected himself to liability through personal involvement, the Court does not need to reach the other two questions asked when determining whether qualified immunity applies. For her part, as noted above, Plaintiff has advanced no argument that the first (or any) of the

questions considered when determining qualified immunity should be answered in the positive rather than the negative.

Therefore, the Court finds that summary judgment is appropriate in favor of Defendants and that Defendant Salandy is entitled to qualified immunity.

B. Practice, Policy, or Custom of Defendant Rutherford County

The Complaint alleges that Defendant Rutherford County (like Defendant Salandy) should be held liable under § 1983 because it (allegedly) was involved in policies that dictated an excessive bail and failed to provide adequately trained medical personnel or proper medical care to decedent, allowing for his successful suicide attempt. (Doc. No. 27). Defendant argues that Defendant Rutherford County is entitled to qualified immunity, and Plaintiff does not disagree.

In the context of municipal liability for a prisoner suicide under § 1983, the Sixth Circuit has recently explained that:

> A municipality "cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978)). Rather, a municipality may be liable under § 1983 "only where its policies are the 'moving force [behind] the constitutional violation.' " *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989) (quoting *Monell*, 436 U.S. at 694, 98 S. Ct. 2018). Such liability "must rest on a direct causal connection between the policies or customs of the city and the constitutional injury to the plaintiff; '[r]espondeat superior* or vicarious liability will not attach under § 1983.' " *Gray*, 399 F.3d at 617 (quoting *Canton*, 489 U.S. at 385, 109 S. Ct. 1197). A municipality may be liable under an inadequate training theory "where the risks from its decision not to train its officers were 'so obvious' as to constitute deliberate indifference to the rights of its citizens." *Id.* at 618. In the prison suicide context, our "case law imposes a duty on the part of municipalities to recognize, or at least not to ignore, obvious risks of suicide that are foreseeable. Where such a risk is clear, the municipality has a duty to take reasonable steps to prevent the suicide." *Id.*

> However, "[v]ery few cases have upheld municipal liability for the suicide of a pre-trial detainee," *id.*, and our cases clearly distinguish between deliberate indifference and negligence. *Id.* at n.1 ("Deliberate indifference remains distinct

from mere negligence. Where a city does create reasonable policies but negligently administers them, there is no deliberate indifference and therefore no § 1983 liability."); *see also Molton v. City of Cleveland*, 839 F.2d 240, 247 (6th Cir. 1988). In *Molton*, we held a municipality could not be held liable where there was no showing that the municipality's policymakers—as opposed to the individual officers directly involved in the inmate's suicide—ignored a known or apparent risk; while those policymakers may have been negligent, "[n]egligence does not establish a § 1983 claim." *Molton*, 839 F.2d at 246-47 (citing *Estelle*, 429 U.S. at 105-06, 97 S. Ct. 285).

If the plaintiff fails to establish a constitutional violation by any individual officer, the municipality itself cannot be held liable under § 1983. *Watkins*, 273 F.3d at 687. That is to say, "where there exists no constitutional violation for failure to take special precautions to prevent suicide, then there can be no constitutional violation on the part of a local government unit based on its failure to promulgate policies and to better train personnel to detect and deter jail suicides." *Crocker ex rel. Est. of Tarzwell v. County of Macomb*, 119 F. App'x 718, 724 (6th Cir. 2005) (citing *Barber*, 953 F.2d at 240) . . .

Here, the municipality *did* have policies in place. It is plausible that the municipality was negligent in enacting and enforcing those policies, but "[d]eliberate indifference remains distinct from mere negligence. Where a city does create reasonable policies, but negligently administers them, there is no deliberate indifference and therefore no § 1983 liability." *Perez*, 466 F.3d at 430. [Plaintiff] has not shown that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Gregory*, 220 F.3d at 442. She has not shown "that the municipal action was taken with the requisite degree of culpability" nor has she demonstrated "a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (citing *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 405, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997)). Rather, she points to things that the municipality *could have done* to prevent the suicide, but "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Gray*, 399 F.3d at 619 (quoting *Canton*, 489 U.S. at 392, 109 S. Ct. 1197).

Moreover, "[p]retrial detainees do not have a constitutional right for cities to ensure, through supervision and discipline, that every possible measure be taken to prevent their suicidal efforts." *Id.* Though we find that [the classification officer] was arguably deliberately indifferent in executing jail policies, such a finding of individual liability cannot—without more—support a finding of municipal liability because a municipality "cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory*, 220 F.3d at 441 (citing *Monell*, 436 U.S. at 694, 98 S. Ct. 2018).14 The facts here are tragic, and we have written before to note the troubling statistics regarding suicides in jail, *see Grabow*, 580 F. App'x at 313 (Donald, J., concurring), but deliberate indifference is a "stringent standard

12

of fault," *Perez*, 466 F.3d at 430, and under that stringent standard, "[v]ery few cases have upheld municipal liability for the suicide of a pre-trial detainee." *Gray*, 399 F.3d at 618. So too here, where the evidence shows that one of the municipality's officers was at least arguably deliberately indifferent but does not show that the "deliberate conduct" of the municipality was *itself* a "moving force" behind the violation of [decedent's] constitutional rights, nor that there is a "direct causal connection" between the municipality's policies or customs and Charles' constitutional injury. *Gregory*, 220 F.3d at 442; *Gray*, 399 F.3d at 617.

*Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 489–91 (6th Cir. 2020). Counties are also persons for purposes of § 1983. *See Miranda v. Clark Cnty.*, Nev., 319 F.3d 465, 469 (9th Cir. 2003) (en banc).

For the same reasons discussed in connection with Defendant Salandy, Plaintiff has not shown that there was a violation of decedent's constitutional rights, and Plaintiff has not tied an alleged violation of decedent's constitutional rights to Defendant Rutherford County or an individual officer of Defendant Rutherford County. Additionally, there is no evidence that there was a practice, policy, or custom of Defendant Rutherford County that resulted in a lack of training or deliberate indifference to decedent's rights. Evidence also shows that decedent's bail was set by an employee of a governmental entity other than Rutherford County, and that Rutherford County had no practice, policy, or custom regarding bail or influence over Dover's decision in regards to the bail amount. Plaintiff does not raise any dispute of material fact as to these issues. Because of both the lack of a violation of decedent's constitutional rights and the lack of a practice, policy, or custom that resulted in decedent's death, the Court finds that Defendant Rutherford County is entitled to summary judgment on Plaintiff's § 1983 claim.

Therefore, the Court agrees that summary judgment should be granted in favor of Defendant Rutherford County.

13

## CONCLUSION

It is of course always tragic when we lose anyone in our community to suicide, and here one can sympathize greatly with Plaintiff, the mother of the decedent. But a legal remedy against one or more specific defendants does not necessarily follow along with that sympathy. A remedy can be ordered only against a defendant who is liable for it under the facts and the law. In this case, as even Plaintiff's counsel eventually concluded in essence, there is no such defendant.

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 49) will be GRANTED.

An appropriate order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

14